ESTATE OF MARGARET E. CALLAGHAN, J. JOSEPH CALLAGHAN, EXECUTOR UNDER THE WILL OF MARGARET E. CALLAGHAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62267. Filed February 12, 1960.

*John J. Sullivan, Esq.*, and *John J. FitzGerald, Esq.*, for the petitioner.

*Manning K. Leiter, Esq.*, for the respondent.

872

OPINION.

OPPER, *Judge:* The legal issue which might be presented here is one as to which there is no Tax Court authority. It was recognized in *Estate of George W. Dichtel,* 30 T.C. 1258, but explicitly left undecided.

Petitioner urges that decedent's bequest of a one-fourth interest in her residuary estate, being to her daughter, a member of an incorporated religious order who was under an obligation to turn the bequest over to the order for its own use, was a deductible bequest, legacy, devise, or transfer to or for the use of a charitable corporation within the meaning of section 812(d). Respondent contests the validity of the daughter's alleged obligation, contending that her solemn vows, coming long after her admission to the convent, were not supported by consideration and were accordingly not binding. The conclusion at which we have arrived permits us to assume that consideration, if required,[2] existed and that the convent had an enforcible right to the property bequeathed to the daughter. See *St. Benedict Order* v. *Steinhauser,* 234 U.S. 640.

As we said in *Estate of Annie Sells,* 10 T.C. 692, 699:

It is a cardinal principle in the interpretation of wills that they be construed to effectuate the intention of the testator * * *

The statement is also made—

that if a general charitable purpose is manifest, within the limits of the testator's language, a broad and liberal construction should be applied to that language and the gift upheld.

See also, *Desoe* v. *Desoe,* 304 Mass. 231, 23 N.E. 2d 82 (1939).

---

[2] Petitioner contends that the claimed "deduction is not based upon any contractual aspects between Margaret Mary * * * and her Convent * * *," and that "Sister Laurentia [Margaret Mary] made no contract * * * whereby she promised to turn over or surrender any property * * * in consideration of some quid pro quo." (Petitioner's brief.) Contrast with this the language of *St. Benedict Order* v. *Steinhauser,* 234 U.S. 640, 648–649, 651: "These [gains] go to the corporation *in exchange for* the privileges of membership and to further the common purpose to which the members are devoted. * * * *He had agreed,* by accepting membership under the [Order's] constitution, that his individual earnings and acquisitions, like those of other members, should go into the common fund * * *." (Emphasis added.)

Petitioner alleges that Margaret Mary, the daughter, was "nothing but a conduit, straw, vehicle or nominee for The Carmelite Convent," and that decedent so intended when she made her will. There is certainly nothing in the testatrix's "language" to indicate such an intention and the only external evidence of intent is Joseph's testimony that his mother believed that any gift to Rose or Margaret Mary would pass to their respective religious organizations.

But decedent's intent, as evidenced by her will, was to treat all of her children equally after disposing of certain property which would have been of no benefit to those in religious organizations and her belief that the bequests to Rose and Margaret Mary would pass to their respective religious organizations indicates nothing more to us than that decedent was reconciled to any disposition which leaving property to her children might result in. There is no indication that decedent would have drafted her will in any different form whether or not she was aware that Rose and Margaret Mary were capable of acquiring and retaining bequests in their own behalf, as they in fact both were for many years after decedent executed her will and Rose was when it became effective.[3] Had decedent intended to make a direct charitable bequest, it would have been a simple matter for her to have made the bequest outright to the religious organizations.[4]

While *Estate of George W. Dichtel, supra,* did not foreclose this point, we are reinforced in the present view by the language in which the Tax Court disclaimed decision of the question (p. 1262):

> In arriving at this conclusion we do not reach the question as to whether a bequest made to a member of a religious order who was under an obligation, *of which the testator had notice,* to turn such bequest over to the order for its own use would constitute a deductible charitable transfer within the purview of section 812(d) of the Code. But see *Delaney* vs. *Gardner* * * * [Emphasis added.]

These words we take to mean that at least knowledge of the solemn vow must exist when the will is executed. Not only is no such knowledge shown here, but, actually, the fact did not then exist.

To hold otherwise would require that the express terms of a will could be changed first one way then another[5] from time to time by the acts of a third party undertaken after its execution and without testator's knowledge. It is difficult to see that this could, in the terms of the statute, be even a "transfer" by the "*decedent*" for the

---

[3] It was, in fact, some 9 years after the will was executed in 1942 that Margaret Mary, on January 23, 1952, undertook the solemn vows, pursuant to canonical authorization dated January 9, 1952. Decedent died only some 6 months later, July 17, 1952.

[4] Decedent apparently recognized this possibility, since she took that course of action several years after executing her will and several years prior to her death when she made gifts of cash to petitioner and Teresa and made identical gifts directly to the religious organizations to which Rose and Margaret Mary belonged.

[5] "When withdrawal or dismissal occurs, permitted only with approval of the Pope, all the property to which the member became entitled *during her membership,* belongs to the Society; she takes none with her." (Petitioner's brief; emphasis added.)

benefit of a charity. And it seems clear that the word "transfer" in section 812(d), as distinguished from "bequests, legacies or devises," [6] is intended to refer to an inter vivos conveyance which is includible under section 811. See, e.g., section 811(j), last sentence.

Petitioner argues that "[t]he Congressional intent [behind section 812(d)] was not so much to benefit the decedent testator who is no longer among the living, but the remaining beneficiaries of the decedent's Estate, if some part of the Estate moved to charity and thus relieved municipal, state or Federal units of some burdens." Such an argument is disposed of by *Y.M.C.A.* v. *Davis*, 264 U.S. 47, 50, where, in discussing a forerunner of section 812(d), it was said:

> Congress was thus looking at the subject from the standpoint of the testator and not from the immediate point of view of the beneficiaries. It was intending to favor gifts for altruistic objects, not by specific exemption of those gifts but by encouraging testators to make such gifts. Congress was in reality dealing with the testator before his death. It said to him
>
> "if you will make such gifts, we'll reduce your death duties and measure them not by your whole estate but by that amount, less what you give."

There is no evidence within or outside the present will that decedent intended to make a charitable transfer through a constructive trust or otherwise. Cf. *Marine Midland Trust Co. of Southern N.Y.* v. *McGowan*, (C.A. 2) 223 F. 2d 408. Petitioner's claim for a deduction must therefore fail in any event, although this result is also supported by a construction of section 812(d) that it applies "only to those gifts which pass by the terms of a testamentary instrument," *Delaney* v. *Gardner*, (C.A. 1) 204 F. 2d 855, 860,[7] and not, presumably, through some outside obligation, no matter how binding, undertaken voluntarily or otherwise by a legatee.

*Decision will be entered under Rules 50 and 51.*

---

[6] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

   *        *        *        *        *        *        *

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers, to or for the use of * * * any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *

[7] Petitioner disposes of this case by contending that the Court erred in applying a literal interpretation to section 812(d).